**John CHESTER**

v.

**F. David MATHEWS, Secretary, Department of Health, Education and Welfare.**

**Civ. A. No. N–75–134.**

United States District Court,
D. Maryland.

Oct. 24, 1975.

James W. Rourke, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., D. Md., and Virginia S. Draper, Asst. U. S. Atty., for defendant.

NORTHROP, Chief Judge.

This is an action filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1970), wherein the plaintiff, Mr. John Chester, seeks review of the final decision of the Secretary of Health, Education & Welfare denying his claim for disability benefits. Both plaintiff and defendant have moved for summary judgment. Plaintiff has moved alternatively for remand to the Secretary for the taking of additional evidence.

The plaintiff filed an application for Social Security disability benefits on March 6, 1973, alleging that he had been unable to work since April, 1971, due to "heart, high blood pressure."[1] The

Social Security Administration denied the claim on May 24, 1973. Upon plaintiff's request for reconsideration, the denial was affirmed by the Administration by letter of July 25, 1973. Plaintiff requested and was granted a de novo hearing before an Administrative Law Judge ("judge"). This hearing was held before Administrative Law Judge George W. Blaine with the plaintiff represented by an attorney. At this hearing the judge received as evidence a number of written medical reports on the plaintiff as well as oral testimony from plaintiff and from a vocational expert. In an opinion dated April 4, 1974, the judge found that the plaintiff was entitled to disability benefits under the Act. The Appeals Council, on its own motion, reviewed the judge's decision, and after receipt of additional evidence but without another hearing, issued a decision on December 3, 1974, reversing the judge and finding that plaintiff was not under a disability as defined by the Act. This decision of the Appeals Council constitutes the final decision of the Secretary.

In his petition to this Court for review of the Secretary's final decision, plaintiff contends that: "(a) there is no substantial evidence to support the administrative findings which are under review; (b) the Appeals Council applied incorrect standards of law to this case; (c) the evidence was not fully and fairly developed in the administrative process." In his motion in the alternative for remand, plaintiff submits further medical reports as new evidence constituting good cause for such a remand.

Section 205(g) of the Social Security Act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .." 42 U.S.C. § 405(g). Thus, judicial review of a decision by the Secretary is limited to a determination of whether the Secretary applied the cor-

---

1. A previous application by plaintiff for disability benefits filed on December 1, 1970, alleging inability to work after December 20, 1968, due to "hypertension" had been denied in 1971 by the Social Security Administration initially and on reconsideration. The plaintiff had not appealed this denial.

rect legal standards in his fact-finding, *Knox v. Finch,* 427 F.2d 919 (5th Cir. 1970), and whether the factual conclusions reached in applying these standards are supported by "substantial evidence." *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972); *Laws v. Celebreeze,* 368 F.2d 640 (4th Cir. 1966). Although resolution of conflicts in the evidence is solely within the province of the Secretary as trier of the facts, *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964); *see Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), this Court on review must make a "searching investigation" of the entire record to determine if substantial evidence for the Secretary's decision does exist. *Flack v. Cohen,* 413 F.2d 278, 280 (4th Cir. 1969).

■ The correct legal standard for "disability" under the Social Security Act is "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .." 42 U.S.C. § 423(d)(1)(A). The claimant has the initial burden of proving such an impairment, *Blalock v. Richardson, supra,* but once he establishes an inability to perform his usual occupation, the burden shifts to the Secretary to show that the claimant can perform a specific job that exists in the national economy. *Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir. 1975); *Hernandez v. Weinberger,* 493 F.2d 1120, 1122–23 (1st Cir. 1974); *Meneses v. Secretary of H. E. W.,* 143 U.S.App.D.C. 81, 442 F.2d 803, 806 (1971). In the instant case, the Appeals Council found that "claimant is precluded from engaging in the arduous duties required in his principal occupation as a laborer in the shipyard and construction industries," and therefore the burden shifted to the Secretary of going forward with evidence to show that plaintiff could nevertheless perform some specific job that

exists in the national economy. In an attempt to meet this burden, the Appeals Council found further that "claimant has the physical and emotional capacity to perform the jobs enumerated by the vocational expert [who had previously testified at the hearing before the judge]" and that the "evidence fails to establish that the claimant's impairments have prevented him from engaging in substantial gainful activity for any continuous period of 12 months." It is clear, therefore, that the correct legal standard of ability to engage in any substantial gainful activity was used. The question remains, however, of whether the Appeals Council's findings were based on substantial evidence.

■ Substantial evidence has been defined as "more than a scintilla, but less than a preponderance," *Thomas v. Celebrezze,* 331 F.2d 541 (4th Cir. 1964). The Supreme Court has characterized it as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In order that a reviewing court may properly evaluate whether the findings of an Administrative Law Judge (or an Appeals Council) are based on substantial evidence, those findings must be explicit, *Choratch v. Finch,* 438 F.2d 342, 343 (3d Cir. 1971); *Williams v. Celebrezze,* 359 F.2d 950, 952 (4th Cir. 1966); *Smith v. Weinberger,* 394 F.Supp. 1002, 1006 (D. Md.1975). They must also be detailed, even to the extent of including findings of subordinate facts upon which ultimate facts are based. *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir. 1974); *Smith v. Weinberger, supra.* In general, the Administrative Law Judge must inquire into disability claims "in a manner that *fully* and *fairly* develops the facts," *Garrett v. Richardson,* 471 F.2d 598, 603 (8th Cir. 1972) (emphasis in original), *Smith v. Weinberger, supra;* and with regard to a claimant's ability or inability to engage in any substantial gainful activity, he must consider the following

four factors: (1) objective medical facts (clinical findings); (2) the medical opinions of the examining or treating physicians based upon those facts; (3) the subjective evidence of pain and disability testified to by the claimant and corroborated by other evidence; and (4) the claimant's background, work history, and present age. *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). If the claimant has more than one allegedly disabling ailment, the Secretary must consider not just the disabling effect of each ailment in isolation but also the effect upon claimant in combination. *Lackey v. Celebrezze*, 349 F.2d 76, 79 (4th Cir. 1965); *Combs v. Weinberger*, 501 F.2d 1361, 1363 (4th Cir. 1974). When the claimant has met his initial burden of establishing prima facie evidence of disability, the Secretary cannot meet his burden of going forward with evidence of plaintiff's ability to perform some specific job in the economy merely by offering medical testimony that plaintiff has the physical, as opposed to the vocational, ability to perform certain types of work. *Taylor v. Weinberger*, *supra* at 667; *Orzel v. Finch*, 445 F.2d 150, 154 (7th Cir. 1971). Nor can the Secretary meet his burden merely by administrative "notice" that the claimant possesses specific vocational capacities. *Taylor v. Weinberger*, *supra* at 668. Moreover, the Secretary's burden may in some cases be said not to have been met even by evidence that claimant has received certain training subsequent to the alleged disablement. *Id.* In addition, the Secretary must explicitly consider the claimant's subjective symptoms, *DePaepe v. Richardson*, 464 F.2d 92, 99 (5th Cir. 1972), *Smith v. Weinberger*, *supra*, especially where the Appeals Council reverses the decision of a hearing judge who had relied on such evidence. *Combs v. Weinberger*, *supra*. While the Secretary has a right to reject such subjective evidence, *Reyes Robles v. Finch*, 409 F.2d 84, 87 (1st Cir. 1969), the failure to do so explicitly leads to the conclusion that such evidence has not been considered at all. *Smith v. Weinberger*, *supra*; *see Baerga v. Richardson*, *supra*.

In order for this Court properly to apply the foregoing general principles to the facts of this case, it will be necessary first to review those facts in some detail.

The plaintiff, John Chester, is a fifty-seven-year-old man who lives alone in a fourth floor apartment in Baltimore City (Tr. 30–31). He has a ninth grade education (Tr. 37). His first employment was in the 1930's as, respectively, a helper in a chemical company, a helper in a brick factory, and a laborer (Tr. 55–56). During the 1940's, Mr. Chester worked as a welder in a shipyard (having been trained on the job) (Tr. 38–39). After briefly serving in the Army (Tr. 34), he returned to work as a shipyard welder and remained at that occupation until 1954. Subsequently, he worked as a laborer on concrete gangs (Tr. 40–41) and as a laborer for a plumbing contractor (not doing any actual plumbing work himself) (Tr. 41). In 1961, he started to work for the National Gypsum Company as a laborer and eventually became a "paperman" (moving paper in bulk with a tow lift) (Tr. 42–43). After leaving National Gypsum in 1968, plaintiff worked irregularly as a "day laborer" and as a "scab" longshoreman. He has not worked since 1971 (Tr. 107).

Plaintiff's pertinent medical history, as contained in the record, begins with his hospitalization for a year while in the Army due to a "nervous breakdown" (Tr. 56–57). Plaintiff presently receives a 10% service-connected disability pension from the Veterans' Administration ("VA") (Tr. 34).

In 1969, plaintiff began receiving treatment at the University of Maryland Hospital after he complained of dizziness. The diagnosis at that time was essential hypertension (Tr. 131), and plaintiff was subsequently treated in that hospital's outpatient clinic. Examination of the plaintiff on February 4, 1970, revealed atrial fibrillation of the heart, and a diagnosis of hypertensive arteriosclerotic cardiovascular disease (HASCVD) was added to his record (Tr.

132). An electrocardiogram (EKG) performed on April 10, 1970, was interpreted as abnormal with left-axis deviation, occasional PVC's, and minor non-specific ST-T wave changes (Tr. 133). Subsequent clinic visits in 1970 revealed no significant changes in the plaintiff's condition.

On January 21, 1971, plaintiff was examined at the Social Security Administration's request (in conjunction with his 1971 application for benefits) by Dr. Stanley Miller, an internist. Dr. Miller's impression was HASCVD (Class 2B); essential hypertension, mild; anxiety state, severe; and obesity (Tr. 142). Dr. Miller was of the opinion that plaintiff "should be able to engage in light to medium work" (Tr. 142).

On April 29, 1971, plaintiff was sent to the University of Maryland Hospital's emergency room after collapsing in the street. An EKG showed atrial fibrillation (Tr. 137). He was transferred to Loch Raven VA Hospital's Intensive Care Unit on April 30, 1971. The diagnoses were: hyperuricemia; diabetes mellitus, mild; ischemic heart disease; and probable myocardial infarction (Tr. 138). Plaintiff was discharged on May 19, 1971, and was instructed to remain at home one month (Tr. 139). On June 22, 1971, plaintiff submitted to the Social Security Administration an undated VA prescription form on which a doctor had stated that plaintiff would be totally disabled for stevedore work for another five months and for light work for another two months (Tr. 149).

At the request of the Secretary, plaintiff was examined on September 22, 1971, by Dr. Irvin Hyatt, gastroenterologist and internist. An EKG was interpreted as "LAD, horizontal heart, slight clockwise rotation, otherwise, no abnormality" (Tr. 152). A chest X-ray by Dr. David Golub, radiologist in consultation with Dr. Hyatt, gave an impression of tortuous aorta with a suggestion of previous pleurisy and pulmonary emphysema (Tr. 153). Dr. Hyatt summarized his findings as follows:

In order to complete this patient's history, the VA Psychiatric and Medical Clinics should be requested to submit detailed information. In addition, a summary of his recent hospitalization should be sought. I would suspect that he did not have an acute myocardial infarction but perhaps did have some paroxysmal arrhythmia. There is nothing to indicate a residual infarction on this EKG. Digitalis and Quinidine may be given as a preventative for his possible tendency to arrhythmia. I have no explanation for his syncopal episodes except this may occur on the basis of a tachycardia or heart block. He no longer has any hypertension or any end organ damage that can be shown. Although the patient may have had a psychotic episode years back and has required out-patient psychiatric therapy, he shows no sign of any serious disturbance at this time. Unless his recent hospital stay is proven to be an acute M.I. or acute coronary insufficiency, he appears capable of light or medium work. There may be a strong functional component. (Tr. 152).

Plaintiff was admitted to Bon Secours Hospital on January 3, 1973. The diagnosis was right lower lobe pneumonia (Tr. 155–165). He was discharged on January 12, 1973. On January 29, 1973, he was treated in the emergency room for diagnoses of atrial fibrillation with conversion to sinus rhythm and right lower lobe pneumonia (Tr. 166). The record indicates follow-up clinic care with regard to both diagnoses (Tr. 167–168).

On May 4, 1973, at the request of the Secretary and with regard to plaintiff's present application for disability benefits, plaintiff was examined by Dr. Francis Daly, an internist. Dr. Daly observed that the plaintiff was "apparently under the influence of alcohol." Noting that it was "extremely difficult" to examine patient, Dr. Daly reported an impression of "history of heart attack" and "probable chronic alcoholism" (Tr. 171).

The foregoing constitutes the significant evidence presented to the judge at plaintiff's hearing on March 12, 1974. At the hearing the judge questioned plaintiff carefully about his medical problems and vocational history. At one point, the judge observed that the plaintiff did not "look very happy," and the plaintiff pointed out that he did not feel well (Tr. 30). At another point much later in the hearing, the judge interrupted questioning of the vocational expert by the plaintiff's attorney in order to ask plaintiff if he had any pain. Plaintiff replied that his heart was beating fast and that he did not have his pills with him (Tr. 78). At yet another point, the judge asked plaintiff if, during a previous year, he had been feeling "better than you are now." Plaintiff replied affirmatively (Tr. 66).

The judge also questioned Mr. Daniel Mauchline, a vocational expert. He asked him one question only as follows:

Q Mr. Mauchline, on the evidence of record, the subsequent record as of the moment, and based on the claimant's past work experience, does he have any usable skills that could be transferred to other jobs of lighter classifications? (Tr. 70–71).

The expert cited five types of jobs that plaintiff might be able to perform. Thereafter, plaintiff's attorney questioned the expert extensively regarding the nature of these jobs, their availability, and plaintiff's vocational suitability to them (Tr. 73–78).

On the basis of all of the foregoing evidence, the judge made the following findings:

. . . As of the date of this examination [Dr. Daly's on May 4, 1973], it is concluded that the claimant was able to engage in the substantial gainful activity of a light nature recommended by the Vocational Expert.

As of the time of the hearing, it is determined that the claimant's underlying conditions had further deteriorated, and that in consideration of the history of the abnormal electrocardiograms, the complaints of dizziness, the episodes of fibrillation, the presence of arteriosclerotic cardiovascular disease, the obesity, and the anxiety state, and that in consideration of his age, education, and work experience, that the claimant was unable to return to any of his former jobs, and that he had no realistic chance of other suitable employment. Further, it is not unreasonable to establish the onset date of this disability as November 1, 1973, a midpoint between the date of the last consultative examination and the time of the hearing. (Tr. 15).

Before reversing the decision of the judge, the Appeals Council collected one further item of evidence. In an apparent effort to verify the judge's conclusion that plaintiff's condition at the time of the hearing had "deteriorated" from the time of Dr. Daly's examination, the Appeals Council sent the plaintiff to Dr. Albert Antlitz, an internist, for further examination. Dr. Antlitz arrived at an impression of HASCVD with left anterior hemiblock, premature atrial beats after exercise, full-sized heart on X-ray, and cardiac classification II–C (Tr. 188). He advised that the plaintiff's "ordinary physical activity should be moderately restricted and his more strenuous efforts discontinued." In particular, he cautioned that the plaintiff should avoid prolonged standing, limit his walking to 2–3 blocks no more than 2–3 times per day, avoid repeated bending or stooping, not use his arms over his head, and lift not more than 10–25 pounds not more often than 1–2 times an hour (Tr. 189). He also concluded that plaintiff's "previous type work is beyond his capacity" and that:

[h]e is capable of sedentary and some light physical activity. He has no skills or experience to permit this type of work. Vocational rehabilitation may be possible. (Tr. 189).

Dr. Antlitz gave a medical prognosis of "fair with a gradual progression in the heart disease expected."

The Appeals Council determined that Dr. Antlitz' report was consistent with other evidence in the record in indicating that plaintiff could not return to his usual occupation as a laborer. It went on to point out, however, that it was in agreement with Dr. Antlitz that plaintiff is "capable of sedentary and some light activity." It therefore concluded: "Since there are no other significant impairments which would contraindicate such work, the Council is persuaded that the claimant can perform those light and sedentary jobs enumerated by the vocational expert as being consistent with his age, education, prior vocational experience and residual physical ability."

For several compelling reasons, this Court finds no substantial evidence to support the Appeals Council's decision.

 First, in the landmark administrative law case, *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), the United States Supreme Court laid down the following general guidelines for court review of an agency's decision which differs from that of its own hearing examiner:

> We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that *evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion.*

*Id.* at 496, 71 S.Ct. at 469 (emphasis added). The Fourth Circuit has adopted these guidelines as being applicable to the Social Security Administration. *Combs v. Weinberger, supra* at 1363. Indeed, it has given such guidelines special emphasis with regard to review of an Appeals Council's reversal of an Ad-

ministrative Law Judge where that judge has found a claimant's subjective testimony and symptoms significant and persuasive. *Id.* Although the judge's findings in the instant case can perhaps be characterized as a bit vague as to an analysis of the subjective evidence, the fact that he could arrive at an assessment that plaintiff had deteriorated from a previous medical examination leads inescapably to the conclusion that he gave great weight to his observation of plaintiff's demeanor and mood. This conclusion is buttressed by the fact that the transcript reveals several instances where the judge expressed interest in and concern for plaintiff's apparent distress. It is entirely proper that the judge should have given such weight to the subjective evidence. *Underwood v. Ribicoff*, 298 F.2d 850, 852 (4th Cir. 1962); *Combs v. Weinberger, supra* at 1362–63. Nevertheless, the Appeals Council in its decision makes no mention of plaintiff's testimony nor of the judge's obvious reliance on it. Thus, the decision cannot be said to be based on substantial evidence. *Id.*

 A second significant aspect of the hearing judge's reversed findings was that he reached his ultimate conclusion of disability on the strength of a *combined* assessment of plaintiff's various ailments and complaints. This was a proper approach. *Id.; Lackey v. Celebrezze, supra.* The Appeals Council's decision, on the other hand, falls short in this regard. While it comprehensively surveys each of plaintiff's medical problems (Tr. 9), it analyzes their effects in isolation. Nowhere does it speak to the combined effect which the hearing judge found persuasive. The Appeals Council placed primary emphasis on Dr. Antlitz' report, but that report only purported to base its conclusions about the patient's capabilities on the effects of the heart disease (Tr. 189). No analysis was made by Dr. Antlitz of the possible augmenting effects of chronic pulmonary problems, obesity, diabetes, chronic alcoholism, or, especially, psychiatric disorder.

**118**

Thus, the Appeals Council's decision cannot be said to be based on substantial evidence. *Combs v. Weinberger, supra.*

 Last, but not least, in this Court's finding of a lack of substantial evidence for the Appeals Council's decision in this case, is the Council's inappropriate handling of the vocational aspect of plaintiff's predicament. It had the burden of coming forward with evidence that the claimant could perform some job other than his usual occupation. This burden could not be met merely by administrative notice or by analysis of medical reports. Here the Appeals Council attempted to use the testimony that had previously been given by the vocational expert before the hearing judge. This was error. A vocational expert's opinion in a disability case is only worthwhile if it is based on a consideration of all other evidence that has been brought out in the case. *Glass v. Weinberger,* 517 F.2d 224 (3rd Cir., 1975); *Davis v. Weinberger,* Civil No. Y–74–546 (D.Md., April 23, 1975). The vocational expert's testimony, as used by the Appeals Council in this case, is fatally deficient in this regard for it obviously was not based on any of the findings of Dr. Antlitz on which the Appeals Council placed primary focus. Those findings had not even been made when the testimony was given. It is conceivable that an attempt to bootstrap in the vocational implications of subsequent medical findings might not be entirely inappropriate if those findings are the same or extremely similar to other findings in the record. It is clear, however, that the findings of Dr. Antlitz do not possess the requisite similarity. It is true that the general appraisal by Dr. Antlitz that the plaintiff could engage in "sedentary or light activity" was the same as previous appraisals (which, by the way, were three years ·old at the time of the Appeals Council's decision). What is significantly different about Dr. Antlitz' findings, though, is that they elaborate to a much greater extent than any previous

findings on details of the plaintiff's physical capabilities such as standing, lifting, and walking. It is such details that are of particular interest to a vocational expert in making his assessments. For instance, the expert here talked of the plaintiff being able to rejuvenate his welding career, and he pointed out that such an occupation requires frequent carrying of up to 15 pounds. Yet, Dr. Antlitz indicates that plaintiff can lift 15 pounds at most only 1–2 times in an hour. Similarly, the expert cites a job as a used car lot porter as a feasible option for plaintiff. The *Dictionary of Occupational Titles* specifies that such a job involves extensive sweeping, mopping, and washing of windows. Yet, Dr. Antlitz indicates that plaintiff must avoid prolonged standing and raising his arms over his head. All other possible jobs cited by the vocational expert have similar requirements that are not reconcilable with the limitations specified by Dr. Antlitz.

This Court may, upon finding a lack of substantial evidence to support a decision of the Secretary, issue a judgment "modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When the case is "one that turns upon an inadvertent procedural or technical flaw in the administrative process that reasonably ought to be subject to correction," remand is ordinarily the proper course. *Taylor v. Weinberger, supra* at 668. This, however, is not such a case. On the present state of the record before this Court, it is extremely doubtful, as doubtful as the Fourth Circuit found the circumstances in the *Taylor* case, that the Secretary could on remand reach a conclusion of non-disability which could be said on later review to be based on substantial evidence.

Thus, for the reasons stated above, IT IS this 24th day of October, 1975, Ordered:

1. That the Motion of the defendant for Summary Judgment be, and the same hereby is, denied;

2. That the Motion of the Plaintiff for Summary Judgment be, and the same hereby is, granted, with instructions to the Secretary of Health, Education & Welfare that he extend, as soon as is feasible, disability benefits to the plaintiff retroactive to November 1, 1973.