**James Earl ROE**

v.

**Joseph A. CALIFANO, Jr.,[1] Secretary, Department of Health, Education and Welfare.**

**Civ. A. No. HM76–1025.**

United States District Court, D. Maryland.

March 29, 1977.

---

1. Joseph A. Califano, Jr. succeeded F. David Mathews as Secretary of Health, Education and Welfare on January 25, 1977. Pursuant to 42 U.S.C. § 405(g) (1970) the appropriate substitution has been made.

James Earl Roe, in pro. per.

Jervis S. Finney, U. S. Atty., D. Maryland, Daniel F. Goldstein, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

Plaintiff, James Earl Roe, instituted this action on July 9, 1976 to obtain judicial review of the final decision of the Secretary of Health, Education and Welfare, which denied his claim for benefits pursuant to the Social Security Act, 42 U.S.C. § 301 *et seq.* (1970).

Mr. Roe filed his original application for disability insurance benefits on January 7, 1974. (Tr. 54–57).[2] Plaintiff therein alleged his disability to be "hypertension and cardiac". The alleged onset date of disability was May 1, 1972. (Tr. 54). This claim was denied by letter dated March 19, 1974 from the Division of Initial Claims on the basis that plaintiff did not meet the insured status required by the Act as of the alleged date of disability. (Tr. 58). On December 18, 1974, plaintiff filed another application for disability insurance benefits in which he alleged his disability to be "heart condition, nerves, hypertension". The alleged onset date of disability was May 1, 1972, the same as in the prior application. (Tr. 60). The reason for plaintiff's second application for disability insurance benefits appears to be that pursuant to his filing of an amended individual income tax return showing $500.00 income allegedly derived from self-employment (Tr. 72–73), plaintiff would meet the insured status requirements of the Social Security Act through June 30, 1972. Thus, his alleged disability would have occurred within the period during which he would have maintained insured status and he would therefore potentially be eligible for disability insurance benefits. Although the Administrative Law Judge who heard plaintiff's case expressed serious doubt as to the validity of the amendment to reported income, he determined that any doubt as to the validity of that claim would be resolved in favor of the claimant, and that on that basis plaintiff did meet the special earnings requirements through June 30, 1972. That finding, which is not contested by either party, will be accepted by this Court.

Plaintiff's claim was again denied by the Bureau of Disability Insurance on January 23, 1975. (Tr. 64). The basis for this second denial was that plaintiff had not met the disability requirements of the Social Security Act. Upon notice of request for reconsideration filed by plaintiff on March 11, 1975, (Tr. 66), his claim for disability benefits was reconsidered and again denied at the administrative level. (Tr. 67).

Mr. Roe filed a request for hearing on May 28, 1975. (Tr. 15). Pursuant to that request, Mr. Roe appeared before an Administrative Law Judge on January 22, 1976. Mr. Roe and Daniel Mauchline, a

---

**2.** References are to the Court Transcript filed as part of the defendant's answer in this case and made part of the court file.

vocational expert, testified under oath at that hearing. (Tr. 16–53). On March 12, 1976, the Administrative Law Judge issued a written hearing decision in which he found that although the claimant was unable to perform heavy manual labor or work requiring frequent bending, lifting or stooping, he retained the residual functional capacity to perform certain specified sedentary jobs. Accordingly, benefits were denied by the Administrative Law Judge. (Tr. 6–10). Pursuant to plaintiff's request for review of the hearing decision filed on March 22, 1976, (Tr. 4), the Appeals Council concluded that the decision of the Administrative Law Judge was correct and affirmed his decision. The action of the Appeals Council, dated May 12, 1976, became the final decision of the Secretary for purposes of review in this Court. (Tr. 3). 20 C.F.R. § 404.951.

James Earl Roe was born on July 8, 1932. (Tr. 54). He is married and has five children ranging from 24 to 16 years of age. (Tr. 26). At the time of the hearing before the Administrative Law Judge he was 5′ 8″ tall and weighed 180 pounds. Plaintiff testified that he completed the tenth grade of formal education, and that he has no other special training. (Tr. 27). He worked as a sheet metal mechanic for most of his adult life, (Tr. 28), but stopped working in May of 1972 allegedly because of his disability. (Tr. 28). Plaintiff testified, concerning his abilities and daily activities, that in the spring and summer he fishes as much as twice a month (Tr. 30), that within the last four years he has walked a maximum of three blocks at a time (Tr. 31), and that he is unable to walk farther because of pain in his chest. Plaintiff performs numerous housekeeping duties to assist his wife, who works, including doing the dishes, vacuuming, and laundry. (Tr. 33).

## PLAINTIFF'S MEDICAL HISTORY

The medical records concerning plaintiff's condition fall into two distinct categories— those that report examinations and treatments occurring prior to 1970, and those occurring generally from 1973 through 1975.

A discharge summary from the Harford Memorial Hospital, dated August 28, 1969, revealed that plaintiff was admitted complaining of severe intermittent headaches for the two days prior to admission. Accompanying symptoms of dizziness, blurring of vision, and intermittent anterior chest pain were present. Plaintiff's course in the hospital was considered to be improved by the taking of various medications including Aldomet, 250 Mg., and Butisol, ½ gr. The final diagnosis was reported to be hypertensive encephalopathy. (Tr. 95). X-ray consultation reports from the Harford Memorial Hospital of tests apparently conducted during plaintiff's 1969 hospital stay indicated that the examiner's impression of plaintiff's cervical spine was negative and that an intravenous pyelogram was also negative. Likewise, examination of plaintiff's chest revealed no abnormality. (Tr. 100). A skull series was performed by the Department of Radiology on the same date with negative results. (Tr. 101). An electrocardiographic report, dated August 21, 1969, resulted in the diagnosis of no abnormality. (Tr. 104).

An admission note, dated January 16, 1973, indicates that plaintiff was admitted through the emergency room on that date with chest pain and difficulty in breathing. An electrocardiogram was read as suggestive of an ischemic pattern. Two days later, on January 18, 1973, another electrocardiogram was taken and was interpreted as showing no signs of acute myocardial infarction. Later on that same day plaintiff insisted on being released and, in fact, on that afternoon signed his own release against medical advice. (Tr. 97).

An X-ray examination of plaintiff's chest, conducted on January 17, 1973, revealed his lungs to be clear and fully expanded. The cardiovascular silhouette was borderline enlarged. There was a shift of vascular flow to the vascular structures of the upper lobe suggesting post-capillary pulmonary hypertension. (Tr. 111). An electrocardiographic report of that same date indicated that plaintiff had a slight elevation of ST seg-

ment in the lateral precordial leads which could be due to early re-polarization, but pericarditis could not be ruled out at that tracing. (Tr. 112). An electrocardiographic examination conducted on January 18, 1973 revealed no significant change from the previous report. (Tr. 115).

A medical report, filed on January 7, 1974, by Dr. G. L. Louie indicated that plaintiff had been seen with complaints of vaguely described chest discomfort and pain dating back to 1971 which, at that time, was described as a sharp sticking pain located in the left chest with radiation to the left arm and the posterior neck. At the time of examination the doctor noted that Mr. Roe described his chest pain as a sensation of tight pressure feeling associated with emotional distress and occasionally associated with physical activities. Patient was then able to perform almost all household chores. (Tr. 120). Plaintiff's blood pressure was recorded at 170/98 and, after physical examination, at 140/90. His weight was then 204 pounds and physical examination revealed him to be a moderately obese male in no acute distress. He was alert and oriented. (Tr. 121). Chest X-rays taken on January 7, 1974 and interpreted by Dr. Henry H. Startzman indicated that plaintiff's chest was normal and that there were minor hypertrophic arthritic changes of the cervical spine. No other abnormalities were noted. (Tr. 122). Diagnosis was exogenous obesity, probable angina, and labile hypertension vs. mild hypertension. In terms of treatment, Dr. Louie prescribed nitroglycerine. From January 4 to January 7, 1974, plaintiff had three episodes of chest discomfort; immediate relief was obtained by taking one tablet of nitroglycerine sublingually. (Tr. 123).

A discharge summary concerning the period of hospitalization in February of 1975 at the Harford Memorial Hospital, revealed that plaintiff was admitted to the hospital with a known history of hypertension and that he was on no medications at that time. He complained upon admission of right-sided chest pain which radiated to his right arm and fourth and fifth fingers, which became numb. Plaintiff's blood pressure was recorded at 210/100 and his heart and lungs were found to be entirely normal. Some weakness of the right fourth and fifth fingers was noted; however, neurological examination was otherwise entirely normal. The patient's blood pressure was returned to normal on taking Ser-Ap-Es, one daily. He was also placed on Valium, 5 mg., and Lasix, 40 mg. He was discharged in an improved condition with normal blood pressure and only minimal weakness and tingling of the fourth and fifth fingers on his right hand. (Tr. 125).

On February 15, 1974, Mr. Roe underwent a consultative examination by Dr. Albert M. Antlitz. (Tr. 136–138). Dr. Antlitz reviewed plaintiff's past history, noting that his chest pains were intermittent, occurring two or three times per day, or as little as two or three times per week. A feeling of tightness and shortness of breath accompanied these pains. They were described as lasting two to five minutes and were usually related to activity or exertion. Dr. Antlitz reported that the pains were relieved by nitroglycerine or rest. It was related that plaintiff was able to walk four blocks, but that ascending one flight of steps may cause shortness of breath and chest tightness.

Physical examination revealed plaintiff to be 5'9" tall and weighing 210 pounds. His blood pressure was recorded at 180/110. His heart had a normal sinus rhythm and was full to percussion. No significant murmur, thrills or thrusts were heard and heart sounds were found to be of good quality. An electrocardiogram was interpreted as being abnormal but less marked than a comparison tracing of January 16, 1973. A Master's exercise test was performed with plaintiff completing only twenty of the thirty-six scheduled ascents. The exercise was discontinued because of plaintiff's shortness of breath. No significant electrocardiographic changes were found after this amount of exercise.

Dr. Antlitz' impression was hypertensive arteriosclerotic cardiovascular disease with (a) possible angina pectoris and (b) cardiac

classification II–C. Dr. Antlitz explained this cardiac classification as being a cardiac disease resulting in moderate limitation of physical activity. Ordinary physical activity may result in shortness of breath, fatigue and angina. Dr. Antlitz concluded that plaintiff's normal physical activities should be moderately restricted and that more strenuous efforts should be discontinued. Finally, he found that Mr. Roe was limited to light and sedentary type work activities and that much of his previous work would be beyond his then-present capacity. (Tr. 138).

On April 7, 1975, Dr. Louie reported that during visits occurring after January 7, 1974 the prescription of nitroglycerine was discontinued because it did not relieve plaintiff's vague symptoms of chest pain. Blood pressures were recorded in the upper borderline normal range. Dr. Louie noted that Mr. Roe "was able to do common chores such as taking out trashcans and yard cleaning without any trouble." (Tr. 144).

On May 23, 1975, Dr. Dante U. Monakil reported that Mr. Roe had been under his care since February 10, 1975 for the treatment of (1) hypertension, (2) hypercholesterolemia and hyperuricemia; (3) anginal syndrome; (4) cerebral ischemia; and (5) adrenal mass. Plaintiff's hypertension was noted to be caused by the fifth impairment. Dr. Monakil concluded in pertinent part that "he has been totally disabled since February [1975] because of his many diagnoses". (Tr. 145).

## APPLICABLE LAW

In order to be eligible for disability benefits the claimant must establish that he is under a disability within the meaning of the Act. "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as follows:

Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months . . .

Section 423(d)(2)(A) provides that:

An individual . . . shall be determined to be under a disability only if his physical or mental impairment or impair-

ments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .

The burden is on the claimant to furnish medical and other evidence of the existence of a disability. 42 U.S.C. § 423(d)(5) (1970). The sole issue before this Court is whether there is "substantial evidence" to support the Secretary's decision. 42 U.S.C. § 405(g) (1970). The fact that the record taken as a whole might support a different conclusion is immaterial. The language of Section 405(g) precludes a *de novo* judicial proceeding and requires that the Court uphold the Secretary's decision even if the Court should disagree with the decision so long as it is supported by substantial evidence. *Whiten v. Finch*, 437 F.2d 73 (4th Cir. 1971); *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972). The phrase "substantial evidence" has been defined by the Fourth Circuit Court of Appeals to be:

. . . evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."* (emphasis added).

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Blalock v. Richardson, supra*, at 776.

There are four elements of proof to be weighed in determining whether there is substantial evidence to support the Secretary's decision. These are:

1. The objective medical facts; . . .

2. The diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact;

3. The Subjective evidence of pain testified to by the claimant and corroborated by his wife and his neighbors;

4. Claimant's educational background, work history, and present age.

*Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962); *Blalock v. Richardson, supra*. Thus, it is for the Secretary in the first instance to weigh the evidence and resolve conflicts therein, and the purpose of review in this Court is not to substitute the view of this Court for that of the Secretary so long as there is substantial evidence to support the Secretary's conclusion.

■ In any case, where an individual claims entitlement to disability insurance benefit payments under the Social Security Act he must prove both that he is under a disability as previously defined and that that disability occurred during the time when he met the insured status requirements of the Act. 42 U.S.C. § 423(a)(1)(1970). In the instant case, even though the Administrative Law Judge had reservations as to the validity of plaintiff's additional income in a calendar quarter which would entitle him to an extended period of insured status, the Administrative Law Judge nevertheless found that plaintiff met the insured status requirements through June 30, 1972. That determination is not here contested by the defendant and will be accepted by this Court for purposes of this review. Thus, the question in this case is whether there is substantial evidence to support the conclusion of the Secretary that plaintiff was not disabled within the meaning of the Act prior to June 30, 1972. Even were the evidence in this case to show conclusively that plaintiff was totally disabled at some time after June 30, 1972, the question would still remain whether plaintiff had established such a disabling condition prior to June 30, 1972.

## CONCLUSIONS

This Court has reviewed the exhibits and testimony in this case to determine whether the conclusions of the Secretary are supported by substantial evidence, *Oppenheim v. Finch*, 495 F.2d 396 (4th Cir. 1974) and, having applied the prescribed rules of judicial review of Social Security cases, is compelled to conclude that the Secretary's denial of disability benefits must be affirmed.

The reports concerning plaintiff's 1969 hospitalization at the Harford Memorial Hospital indicate that he was somewhat hypertensive with a blood pressure recorded at 150/98. (Tr. 95). However, an electrocardiogram revealed normal tracings, and a chest X-ray was reported as negative. His condition upon discharge was considered to be improved by the administration of two medications. (Tr. 95). Indeed, in view of the fact that plaintiff continued to work for almost three years after this hospitalization it cannot be said that any condition of disabling severity was then present.

Although the records of plaintiff's more recent hospitalizations and treatments indicate that the cardiovascular silhouette is borderline enlarged and that he continues to suffer from hypertension, a report by Dr. Louie dated January 7, 1974 indicates that plaintiff experienced difficulties with his hypertension, which was then characterized as mild, and with his borderline cardiac enlargement, only at times of emotional distress or occasionally when there is physical activity. However, the report indicated that he was able to perform almost all of his household chores. Dr. Louie also reported that one tablet of nitroglycerine taken sublingually gave the patient immediate symptomatic relief.

A discharge summary concerning plaintiff's February, 1975 hospitalization at Harford Memorial Hospital indicated that his heart and lungs were entirely normal, that his blood pressure was 210/100; however, plaintiff's blood pressure was returned to normal by the taking of daily medication.

Similarly, a report from Dr. Antlitz indicates that plaintiff's intermittent chest pain was usually associated with activity or exertion and that these were relieved by the taking of nitroglycerine or by resting. Dr. Antlitz concluded that the plaintiff was limited to light and sedentary work activities. (Tr. 138).

■ It is clear that in this case the Administrative Law Judge resolved the conflicting evidence concerning plaintiff's im-

pairments in Mr. Roe's favor, inasmuch as he found that the claimant was unable to perform heavy manual labor or work requiring frequent bending, lifting or stooping. (Tr. 10). Accordingly, the plaintiff has demonstrated a *prima facie* case of disability which renders him unable to engage in his previous employment. Therefore, the burden shifts to the Secretary to demonstrate by competent evidence that there is work existing in the economy which, considering plaintiff's residual functional capacity and his age, education and vocational background, he would be able to perform. *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

The Secretary's burden under the statute, . . . is twofold: (1) the claimant, given his age, education, and work experience, has the capacity to perform a specific job; (2) which exists in the national economy.

*Taylor v. Weinberger, supra.*

The Secretary has discharged this burden in the instant case by producing Daniel Mauchline, a vocational expert, who testified under oath at the hearing before the Administrative Law Judge. The Administrative Law Judge posed various hypothetical questions to Mr. Mauchline in order to elicit testimony concerning the claimant's residual functional capacity. Based upon that version of the testimony most favorable to the claimant, that is, assuming that the claimant had all the limitations, restrictions and pain which he alleged in his testimony, Mr. Mauchline nevertheless concluded that Mr. Roe could work in various sedentary occupations such as a chassis assembler in the electronics industry, an estimator for the cost of sheet metal jobs for contractors, as a gatetender in heavy industry, or as a handpackager of such small items as bolts, nuts, pills, etc. (Tr. 49–52). Mr. Mauchline's opinion that such jobs exist in significant numbers in the local economy was based upon local publications and surveys which he had personally conducted. (Tr. 52).

It is abundantly clear that the vocational expert's testimony, based as it was on the view of the evidence most favorable to Mr. Roe, constitutes substantial evidence to support the conclusion that plaintiff retains the capacity to engage in gainful activity of a sedentary nature, and that such positions exist in the local economy. *Chester v. Mathews*, 403 F.Supp. 110, 118 (D.Md.1975).

Plaintiff assigns some nine specifications of error on the part of the Administrative Law Judge which, he urges, require that this case be reversed or remanded to the Secretary for a new hearing.

■ First, Mr. Roe complains that his subjective complaints of pain were not evaluated by the Administrative Law Judge. It is clear that the Administrative Law Judge did consider these complaints as part of the evidence before him. (Tr. 8). In fact, he certainly gave some credence to these complaints, because the Administrative Law Judge found, in the plaintiff's favor, that Mr. Roe was unable to perform in his previous occupation. (Tr. 10). Although the Administrative Law Judge is required to consider subjective complaints of pain, he is not required to accept that testimony as true, especially when the severity of which a claimant has testified is contradicted by the medical evidence. *See, Combs v. Weinberger*, 501 F.2d 1361, 1363 (4th Cir. 1974).

The plaintiff's second objection, that he was not afforded an opportunity to cross-examine the vocational expert, is contradicted by the record (Trs. 52–53) and therefore is without merit.

■ Third, Mr. Roe asserts that the Administrative Law Judge evaluated his hypertension under an incorrect standard requiring end organ damage to establish disability. Although the Administrative Law Judge did refer to the non-existence of end organ damage, (Tr. 9), this reference was merely a comment upon the existence of severe hypertension, which end organ damage would tend to corroborate. There is no indication that the Administrative Law Judge considered the absence of end organ damage to be determinative.

■ Fourth, plaintiff complains that the hypothetical questions posed to the voca-

tional expert do not reflect the undisputed evidence in the case. The short answer to this objection is that there is no requirement that the assumptions upon which the vocational expert bases his testimony be uncontested; it is only necessary that there be some evidence in the record of the facts assumed. *Chester v. Mathews, supra.*

■ Fifth, Mr. Roe alleges that the Administrative Law Judge failed to obtain medical records from the United States Civil Service Commission, and that he has been found by the Civil Service Commission to be disabled. Preliminarily, while the Secretary is required to consider the reports of other government agencies concerning a claimant's alleged disability under another program, *Faust v. Mathews*, 549 F.2d 798 (4th Cir., 1976) (*per curiam*), the findings of such other agencies are not binding upon the Secretary. See, 20 C.F.R. § 404.1525. Moreover, there is no indication that any such medical records exist to supplement those currently before this Court. Accordingly, no reason appears to disturb the findings of the Secretary on this basis.

Plaintiff's sixth complaint relates to his allegation that "nerves" were a factor in his disability, and that this allegation was not evaluated by the Administrative Law Judge. The obvious reason for the omission by the Administrative Law Judge is that there nowhere appears any evidence concerning this alleged impairment. The burden of producing evidence as to alleged medical impairments lies with the claimant in the first instance, and Mr. Roe's failure to do so cannot be blamed on the defendant.

■ Seventh, plaintiff faults the vocational expert for not fully explaining the jobs for which he opined that Mr. Roe would be suited, on the basis that informed judicial review is thereby hampered. Under the "substantial evidence" test heretofore detailed and applied, it is only necessary that evidence be brought forth that jobs exist in the national economy which the claimant is able to perform. It is not required that the court be intimately aware of the minute details of such employment.

■ Next, plaintiff assails the Administrative Law Judge for relying on the report of a non-examining physician concerning Mr. Roe's residual functional capacity. (Tr. 143). Having applied the "substantial evidence" test and found adequate support for the Secretary's denial, it is not necessary to determine whether individual reports would be sufficient to support the conclusion reached.

■ Finally, plaintiff asserts that the hearing before the Administrative Law Judge was not "full and fair" because he was not represented by counsel. Hearings concerning disability benefits claims are necessarily informal in nature. In the words of Mr. Justice Blackmun, speaking for the Court in *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971):

> This, we think, is as it should be, for this administrative procedure, and these hearings, should be understandable to the layman claimant, should not necessarily be stiff and comfortable only for the trained attorney, and should be liberal and not strict in tone and operation.

Thus, it is clear that counsel is not a requirement of proceedings before an Administrative Law Judge, *Storck v. Weinberger*, 402 F.Supp. 603, 608, n. 1 (D.Md.1975), and that it is only in those cases where there is a showing of prejudice that the question of lack of counsel may warrant a finding of unfairness. No such circumstances are present here. The plaintiff was able to present his claim well and apparently communicated well, both verbally and in writing. Accordingly, no unfairness in this proceeding appears.

Based upon this Court's review of the record as a whole, there exists sufficient evidence that plaintiff is able to engage in gainful activity of a sedentary nature to "justify a refusal to direct a verdict were the case before a jury." *Blalock v. Richardson, supra.*

Accordingly, there being no dispute as to any material fact, and the Secretary being entitled to judgment as a matter of law, it is, this 29th day of March, 1977, by the

**1166**

United States District Court for the District of Maryland, ORDERED:

1. That the defendant's motion for summary judgment be, and the same is hereby, GRANTED.

2. That the Clerk forward copies of this Memorandum and Order to the plaintiff and to Daniel F. Goldstein, Assistant United States Attorney, counsel for the defendant.