856 F.2d 197
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles WARREN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1619.
 United States Court of Appeals, Sixth Circuit.
 Aug. 12, 1988.
 
 Before ENGEL, Chief Circuit Judge, MILBURN, Circuit Judge, and DAVID D. DOWD, District Judge*.
 PER CURIAM.
 
 
 1
 Claimant Charles Warren appeals from the judgment of the district court denying his claim for social security disability benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 Claimant filed an application for disability benefits on September 16, 1982. The application was denied initially and upon reconsideration. After a hearing, an Administrative Law Judge issued an opinion on July 22, 1983, concluding that claimant was not disabled. The Appeals Council approved that determination, and the Secretary's decision was affirmed by the district court on September 19, 1984.
 
 
 3
 On October 23, 1984, claimant filed a second application for disability benefits. His application was denied initially and upon reconsideration, and claimant requested a hearing before an Administrative Law Judge. In an opinion issued on April 7, 1986, the ALJ found that claimant retained the residual functional capacity to perform a limited range of light work. Accordingly, benefits were denied.
 
 
 4
 The Appeals Council denied claimant's request for review, and claimant thereafter sought review in the district court. The case was referred to a magistrate, who concluded that the Secretary's decision was supported by substantial evidence. On June 2, 1987, the magistrate's Report and Recommendation was adopted by the district court. In this appeal, claimant contends that the decision of the Secretary is not supported by substantial evidence and that benefits were improperly denied.
 
 II.
 
 5
 The primary basis for plaintiff's claim of disability is headaches. In 1966, claimant underwent surgery to remove a subdural hematoma. His headaches apparently began at that time.[1]
 
 
 6
 On July 18, 1981, claimant was admitted to Harper Grace Hospital with a leg injury. At that time, he was diagnosed as suffering from secondary polycythemia. On admission, claimant "denied all symptoms in all systems except as mentioned in the present illness." J.A. at 90. He was released to return to work as of August 17, 1981.
 
 
 7
 On September 2, 1982, Dr. Anthony Harris, claimant's treating physician, concluded that claimant was permanently disabled. He stated that claimant continued to suffer from polycythemia and that he suffered headaches and leg pain. J.A. at 96. In a telephone conversation with the Michigan DDS on December 6, 1982, Dr. Harris explained that claimant suffers from constant headaches caused by polycythemia. J.A. at 100.
 
 
 8
 On December 30, 1982, claimant was examined by Dr. M. Wood at the request of the Michigan DDS. Dr. Wood described claimant's history of polycythemia and headaches and indicated that the disorder might be related to the breathing of noxious fumes during the course of claimant's employment as a sanitation worker. Dr. Wood indicated that although claimant's headaches were severe, they were relieved somewhat by Actifed. J.A. at 102. Dr. Wood noted the presence of moderate ventilatory defects.
 
 
 9
 On the basis of this record, combined with claimant's testimony at an administrative hearing, his initial claim for benefits was denied. As indicated above, this disposition was affirmed by the district court, and no further appeal was taken.
 
 
 10
 Additional medical evidence was submitted in connection with claimant's second application for benefits. Once again, the primary basis for the claim is headaches.
 
 
 11
 Claimant was examined by Dr. A. Patel on June 22, 1984. Dr. Patel indicated that claimant reported "bad headaches," and Dr. Patel rendered a diagnosis of polycythemia vera. Although claimant was excitable, nervous, and anxious, the physical examination was otherwise unremarkable. Dr. Patel concluded that claimant was disabled from his regular work, but that his condition was not work-related. Claimant's prognosis was described as fair. J.A. at 203.
 
 
 12
 On November 1, 1984, Dr. Harris reported that claimant possesses a history of diabetes, gout, hypertension, tendonitis, and polycythemia. However, when asked to describe the origin, frequency, and intensity of claimant's headaches, Dr. Harris provided no response, leaving the space below the question on the Secretary's form blank. J.A. at 208.
 
 
 13
 On December 12, 1984, claimant was examined by Dr. Samir Yahia at the request of the Michigan DDS. Once again, claimant offered headaches as his chief complaint. Dr. Yahia reported that claimant was hostile and reticent. Claimant refused to stay for a physical examination after the initial interview, claiming that he had been "humiliated." J.A. at 210-11.
 
 
 14
 On June 6, 1985, Dr. Harris was once again asked to report on claimant's condition. He left the form blank, indicating no changes since his previous report.
 
 
 15
 On July 18, 1985, claimant was examined by Dr. N. Vicencio, once again at the request of the Secretary. Dr. Vicencio indicated that claimant's hypertension and diabetes were well controlled with medication. He reported that the origin of claimant's headaches is unknown. Although claimant complained that the headaches were continuous, a neurological examination was normal. Because the origin of the headaches was unknown, Dr. Vicencio suggested that claimant return to his family physician for further testing.
 
 
 16
 On September 24, 1985, Dr. Harris was once again asked to report on any changes in claimant's condition. Once again the form was signed but left blank.
 
 
 17
 At the hearing held on March 3, 1985, claimant appeared and was not represented by counsel. He testified that he possesses a high school education and past relevant work as a sanitation truck driver. He stated that the job required little lifting, but that the fumes and the smoke "started really getting to [him]" at the time he quit his job. J.A. at 26.
 
 
 18
 Claimant explained that the origin of his headaches is unknown. He stated that he is in constant pain and that the pain becomes worse when he becomes upset. He stated that he sold his home in 1984 because he was no longer able to take care of it. He has also stopped driving. J.A. at 34. He spends most of his time doing "not too much of nothing." J.A. at 35. Reading and watching television exacerbate his headaches. He also has difficulty concentrating.
 
 
 19
 Claimant's testimony was corroborated by that of his wife. She stated that claimant may occasionally go grocery shopping and that she takes him to the doctor, but that this is the extent of his activity.
 
 
 20
 At the hearing, the ALJ also heard testimony from Dr. Samuel Goldstein, a vocational expert. Dr. Goldstein testified that claimant's prior work was semi-skilled and required a medium level of exertion. He stated that if claimant's complaints were accepted, there would be no work in the economy that claimant could perform. However, he stated that if claimant could perform light work but could do no driving or climbing, could not work around heights or machinery, and had to be in a low stress environment, approximately 25,000 jobs in the regional economy would be available. If claimant was also required to work in a relatively pollution-free environment, 16,000 to 17,000 jobs would be available. J.A. at 40-46.
 
 
 21
 On the basis of this record, the ALJ concluded that although claimant suffers from a severe impairment which precludes return to his prior work, he retains the residual functional capacity to perform the light jobs identified by the vocational expert. The magistrate concluded that the Secretary's decision was supported by substantial evidence, and the district court adopted the Report and Recommendation of the magistrate.
 
 III.
 A.
 
 22
 Claimant contends that the Secretary erred in concluding that his headaches were not disabling. The appropriate framework for consideration of claims of disabling pain is found in this court's opinion in Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986). In Duncan, a two-part test for evaluation of complaints of pain was established.
 
 
 23
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 24
 In the present case, the record establishes that claimant does suffer from polycythemia. Although the neurological examination performed by Dr. Vicencio was normal, claimant's pulmonary function studies show the existence of a ventilatory defect, and blood gas studies show abnormal results. Accordingly, we believe that the first prong of the Duncan test has been established.
 
 
 25
 Nevertheless, we believe that substantial evidence supports the determination that the second prong of the Duncan test has not been established. Dr. Harris has made no mention of claimant's headaches since January 1983. Dr. Wood stated that claimant's headaches are relieved by Actifed. We note that both Dr. Vicencio's report and claimant's own testimony at the hearing indicate that the headaches appear to be of an unknown origin. Thus, Dr. Harris' statement that the allegedly disabling headaches are induced by polycythemia appears to be of questionable significance.
 
 
 26
 Moreover, Dr. Harris' statement that claimant is disabled is not binding on the Secretary or this court. See Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985); King v. Heckler, 742 F.2d 968 (6th Cir.1984). His observation was made before the first adjudication of nondisability. In the medical evidence accumulated during the time period relevant to this determination, Dr. Harris has made no further mention of headaches. Under these circumstances, we find no reversible error in the failure to accord conclusive weight to the opinion of the treating physician. Because we find that substantial evidence supports the determination that the second prong of the Duncan test has not been established, benefits were properly denied. See Gaffney v. Bowen, 825 F.2d 98 (6th Cir.1987) (per curiam) (claimant's inability to establish second prong of Duncan test mandated denial of benefits); Siterlet v. Secretary of Health & Human Services, 823 F.2d 918 (6th Cir.1987) (per curiam) (because pain was not diagnosed as severe or disabling, second prong of the Duncan test was not satisfied and therefore benefits were denied).
 
 
 27
 The Secretary argues, and claimant does not seriously dispute, that his other impairments do not constitute a basis for a finding of disability. Although claimant does suffer from hypertension, the record indicates that it is controlled by medication. There has been no end organ damage, a finding consistent with the determination that the hypertension is not severe. See Rowe v. Califano, 433 F.Supp. 1157, 1164 (D.Md.1977). Although claimant suffers from diabetes, it, too, is controlled by diet and medication. Thus, there is no basis for the determination that this condition is disabling.
 
 B.
 
 28
 Claimant also contends that the Secretary committed reversible error by referring to the grid to support the determination that there exists in the national economy a substantial number of jobs which claimant can perform. However, it is clear that the ALJ relied primarily upon the testimony of the vocational expert and used the grid only as a guide. Under these circumstances, it was clearly the testimony of the vocational expert, and not application of the grid, that the ALJ relied upon in making his determination. Utilization of the vocational expert's testimony in combination with reference to the grid as a "framework" for decisionmaking is appropriate when a claimant possesses nonexertional limitations. See, e.g., Hurt v. Secretary of Health & Human Services, 816 F.2d 1141 (6th Cir.1987) (per curiam); Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 528 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983); cf. Gaffney, 825 F.2d at 102 (grid may "be given conclusive effect [only] if there are no non-exertional impairments." (emphasis supplied)).
 
 
 29
 Claimant also contends that the hypothetical propounded to the ALJ did not accurately list his limitations. Specifically, claimant quarrels with the fact that the hypothetical assumes that he retained the residual functional capacity to perform light work. Nevertheless, the law is clear that if there is evidence in the record to support the determination that a claimant possesses the exertional capacity to perform a particular level of work, inclusion of the assumption in the hypothetical is permissible. See Hardaway v. Secretary of Health & Human Services, 823 F.2d 922, 927-28 (6th Cir.1987) (per curiam). In the present case, claimant's exertional capacity is not the focus of his claim of disability. Although he claims to suffer arthritis and tendonitis, the primary impairment forming the basis for his claim of disability is headaches. There appears to be substantial evidence in the record from which the Secretary could conclude that claimant retains the exertional capacity to perform light work.
 
 
 30
 Moreover, we reject plaintiff's argument that the hypothetical did not accurately describe claimant's nonexertional impairments. The ALJ asked the vocational expert to assume that claimant could not drive, climb, work around heights or machinery, crowds, or stress because of his headaches. Moreover, when claimant cross-examined the vocational expert, the vocational expert considered the additional limiting factor of the need to work in a relatively pollution-free environment. We believe that the vocational expert responded with appropriate information regarding the limitations placed on claimant's ability to work by each of his nonexertional restrictions. Accordingly, the vocational expert's response may be utilized to support the determination of nondisability. See Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir.1985) (per curiam); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984).
 
 
 31
 Claimant also argues that the ALJ did not permit him to adequately cross-examine the vocational expert. Claimant and his wife did ask questions of the vocational expert, and the vocational expert responded to these questions. Only when it appeared that claimant and his wife merely wished to argue with the vocational expert was the hearing closed.
 
 
 32
 We have recognized that "[w]hen a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed." Duncan, 801 F.2d at 856; see also Lashley v. Secretary of Health & Human Services, 708 F.2d 1048, 1051 (6th Cir.1983). Nevertheless, "the mere fact that a claimant was unrepresented is not grounds for reversal." Duncan, 801 F.2d at 856.
 
 
 33
 A claimant must demonstrate prejudice before the absence of counsel will render a hearing unfair. Id. (when record "was not adversely affected by the lack of representation," reversal not mandated); see Rowe, 433 F.Supp. at 1165. In the present case, claimant was permitted to cross-examine the vocational expert until he and his wife became argumentative. There is no indication that claimant wished to provide additional evidence that was not considered by the ALJ. Under these circumstances, we find no basis for reversal.
 
 IV.
 
 34
 We conclude that the Secretary's determination that claimant is not disabled is supported by substantial evidence. Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable David D. Dowd, Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Claimant's nondisability as of July 22, 1983, is established as a matter of res judicata. See Califano v. Sanders, 430 U.S. 99 (1977); Wilson v. Califano, 580 F.2d 208 (6th Cir.1978). The medical evidence preceding that date is only discussed insofar as it sheds light upon claimant's current claim for disability benefits