Ishmael **LACKEY**, Appellant,

v.

**Anthony J. CELEBREZZE**, Secretary of
Health, Education, and Welfare,
Appellee.

No. 9665.

United States Court of Appeals
Fourth Circuit.

Argued April 9, 1965.

Decided July 2, 1965.

Glyn Dial Ellis, Logan, W. Va., for appellant.

Robert C. McDiarmid, Atty., Dept. of Justice, (John W. Douglas, Asst. Atty. Gen., Sherman L. Cohn, Atty., Dept. of Justice, and George D. Beter, Acting U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

SOBELOFF, Circuit Judge:

More than four years ago, on March 28, 1961, Ishmael Lackey, of Dingess, West Virginia, filed his application with the Social Security Administration for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act of 1935 (as amended), 42 U.S.C.A. §§ 416(i) and 423 (1964). He complained of inability to work due to high blood pressure, "lung trouble," a "broken left foot," dizziness and poor hearing. The Social Security Administration's Division of Disability Operations recognized that Lackey's health and physical condition were impaired, but did not consider him disabled. Its hearing examiner held that except for claimant's limp there was no evidence of a disability, and therefore denied the application. His decision, which became that of the Secretary, was affirmed by the District Court, and is now before us on appeal. Lackey claims that there is a lack of substantial evidence in the record to support the Secretary's conclusion. For the reasons to be stated, we agree with Lackey's contention.

██ It is well established that in order to be eligible for benefits, a claimant must show, first, that he suffers from a medically determinable physical or mental impairment, and second, that his impairment in fact causes an inability to engage in any substantial gainful activity. 42 U.S.C.A. §§ 416(i) and 423, Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964). The Secretary's position is that Lackey has failed to prove that he is unable to perform any substantial gainful activity and therefore has not satisfied the second requirement.

██ In determining whether a claimant has met his burden of proof, or conversely stated, whether there is substantial support in the record for the Secretary's denial of benefits, four interrelated types of proof are to be considered: (1) objective medical facts, (2) expert medical opinion, (3) subjective evidence of pain and disability, and (4) claimant's present age, educational background and work history. Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

We turn to the record. Lackey was born on March 17, 1915, and was thus forty-six years old at the time of his application for disability benefits. He had absolutely no formal education and can neither read nor write. He went to work when only fourteen years old, and for the next fourteen years performed odd jobs, including hauling and sawing timber at lumberyards. Then, in 1943, at the age of twenty-eight, Lackey took a job in the coal mines, where he performed various types of manual labor until November, 1959, when he was discharged. Since then he has not worked. Lackey claims that physical inability to perform his duties was the reason for the termination of his employment and that his disability continues.

The claimant complains of constant headaches, shortness of breath, dizziness, and blackouts which cause him to become numb, fall to the ground, and remain there for short periods until he recovers. He testified that he was unable to work: "Because I just ain't able. Ain't got no wind. My chest all down in, smotherin', and heart a hurtin' and takin' blackout spells, and just fallin' down." According to Lackey's testimony his condition required him to stay around the house all

day, usually in bed, and he was unable to perform even household chores. His testimony was corroborated by his wife and neighbors, who further told of his constant complaints about his condition.

The claimant sought no medical attention before his discharge in November, 1959, because he feared loss of employment if his employer should discover his ill health. This is his explanation for the failure to produce medical evidence in support of his application. The Social Security Administration, however, referred Lackey to ten doctors for the purpose of evaluating his claim. Their reports, submitted to the examiner, indicated beyond question that Lackey had high blood pressure, pulmonary emphysema, spondylolisthesis, loss of hearing, an amputated right forefinger and an immobilized left ankle. The Secretary does not challenge the existence of any of these infirmities, but questions the severity of several of them, particularly high blood pressure. His position is that neither separately nor in combination are they of sufficient severity to be considered disabling. In reaching this conclusion, the Secretary refused to take into account reports by three of the government-retained doctors who found that Lackey suffers also from heart disease. Two of them specifically found that Lackey's heart was enlarged. However, the Secretary rejected their positive findings because unconfirmed by the reports of three additional doctors who were unable to find objective proof of heart disease. Two of these, nevertheless, did find evidence of hypertension and the third, who failed to find objective evidence of heart disease, based his finding solely on an electrocardiogram taken a year before his diagnosis was made. Even these doctors did not dispute the evidence of hypertension, emphysema and dizziness.

While all of the doctors agreed that Lackey's activities were limited by his several impairments they differed as to the extent of the limitation. One was of the view that because of heart disease Lackey was totally disabled. Another recommended that he refrain from severe exercise. A third suggested that because of the dizzy spells, Lackey should not drive an automobile. Oddly, the evidence is that Lackey has never driven an automobile, but it is significant that the doctor treated seriously the symptoms of dizziness. One cannot help wondering what other abstentions, perhaps more relevant to the claimant's situation, this advice implies. Despite another doctor's opinion that Lackey could do "anything but heavy—active work," he qualified this with a diagnosis of hypertension and cardiovascular disease and, apparently feeling the need for more exact information, suggested that a current electrocardiogram be obtained.

No evidence was introduced before the hearing examiner as to the jobs which the claimant is capable of performing other than one doctor's unspecific remark that Lackey can do "many types of factory work." Just what this means there was no attempt to explain. No vocational counselor was called to show which jobs are within Lackey's limited capabilities.

Upon this record, surprisingly, the examiner found that "except for claimant's limp, there was no evidence of a disability." This is such a complete departure from the evidence, much of it undisputed, that the examiner's conclusion must be regarded as arbitrary.

We find the evidence of disability overwhelming and the Secretary's position without substantial support in the record considered as a whole. We are left with the firm conviction that the only basis for the Secretary's denial of benefits is his excessive insistence on objective evidence of heart disease in disregard of the opinions of government doctors Viscuse and Jamison who did find objective evidence in an enlargement of Lackey's heart. As this court recently said in Dillon v. Celebrezze, 345 F.2d 753 (4th Cir., 1965), "clinical medical reports are not necessarily dispositive of the question of a claimant's disability." This is particularly true because, as the Secretary acknowledges, "medicine is a notoriously inexact science." Therefore,

objective medical findings, or the lack of them, are to be considered not in isolation, but along with the claimant's subjective complaints, medical opinion evidence, and the claimant's general background. Viewing the present record in light of this precept, there is no substantial basis for the rejection of the positive findings of heart disease by three government physicians.

■ Moreover, even apart from the evidence of heart disease, there would be no substantial justification for the rejection of the considerable impressive evidence of other impairments including hypertension, pulmonary emphysema, spondylolisthesis, loss of hearing, an immobilized ankle and amputated finger, the existence of which the Secretary has not challenged, and which make out a *prima facie* showing of disability in the circumstances of this claimant. Arguably, a judge, an artist, or a scientist in his laboratory, restricted to sedentary work, might function acceptably despite such symptoms. A totally illiterate and unskilled person with the physical limitations could not possibly find employment at the only kind of laboring jobs he was ever fitted to perform.

■ The examiner so fragmented his consideration of Lackey's several ailments and the medical opinions regarding each of them that he failed properly to evaluate their effect upon him in combination. Dillon v. Celebrezze, supra.

■■ The Secretary's conclusion cannot be sustained for an additional reason. Since it is beyond dispute, even according to the most adverse testimony, that the claimant's physical condition prevents his return to work in the coal mines,[1] it was incumbent upon the Secretary to show what, if any, kind of work Lackey could perform and the employment opportunities which are available to him. Ray v. Celebrezze, 340 F.2d 556, 559 (4th Cir. 1965). There is a total absence of such evidence from this record. In its place, the examiner points to Lackey's acceptance of state unemployment compensation as evidence of ability to perform substantial gainful activity. His theory is stated as follows: "that the claimant applied for and received unemployment compensation is corroboration of the fact that he considers himself to be physically able to be employed since the application for such benefits presupposes availability for employment." Nevertheless, receipt of unemployment compensation does not in itself prove ability to work. It is undoubtedly true that such compensation is intended only for those who could work but for the lack of available employment. In this record, however, no showing is made that Lackey actually represented to the state authorities that he was able to work or that he was aware of the legal requirements for unemployment compensation. Under these circumstances, acceptance of benefits for a limited time is scarcely disproof of Lackey's present claim.

■ Viewed in its entirety, there is in this record no evidence of a substantial nature to support the examiner's conclusion that the combination of Lackey's impairments was not of sufficient severity to prevent him from engaging in any substantial gainful activity. The very extreme conclusion of the examiner that there is "no evidence of disability except for claimant's limp" is palpably unfounded, no matter how one may appraise the testimony of the several government doctors. The judgment upholding the examiner is therefore reversed. Especially after the long lapse of time, no useful or just purpose would be served by remanding the case. For, as we said in Dillon v. Celebrezze, supra, it would be a wholly unrealistic application of the statutory standards to expect an illiterate person of the claimant's age whose only previous work experience was at hard manual labor in the coal mines and elsewhere and who was suffering under the cumulative proven handicap of these multiple disabilities to obtain, much

---

1. The examiner did not, however, make this specific finding.

less perform, any substantial employment.

Reversed and remanded for entry of judgment in favor of claimant.

Reversed and remanded.