955 F.2d 46
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Bill R. NANCE, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 91-2771.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 12, 1992.
Decided Feb. 19, 1992.
 
 Before BAUER, Chief Judge, and POSNER, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 In accordance with our order from the bench on February 12, 1992, we affirm the district court and adopt its Memorandum and Order, dated July 8, 1991, as our own.
 
 
 2
 AFFIRMED.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE SOUTHERN DISTRICT OF ILLINOIS
 
 3
 BILL R. NANCE, SSN qdo-ia-dlyh Plaintiff,
 
 
 4
 vs.
 
 
 5
 LOUIS SULLIVAN, Secretary of Department of Health and Human
 
 
 6
 Services, Defendant.
 
 Civil No. 89-4191
 
 7
 July 8, 1991.
 
 MEMORANDUM AND ORDER
 FOREMAN, Chief Judge:
 
 8
 Before the Court is the Report and Recommendation of Magistrate Judge Frazier upon review of the Secretary's denial of the plaintiff's application for disability insurance benefits. The Court also considers the plaintiff's Motion to Remand Under Section 405(g) (Document No. 15).
 
 I. BACKGROUND
 
 9
 The plaintiff filed an application for disability insurance benefits on September 16, 1986. The application was initially denied on December 10, 1986, and the denial was affirmed upon reconsideration. A hearing was held on September 17, 1987, before Administrative Law Judge Marshall E. Williams. ALJ Williams found that the plaintiff was not disabled and, thus, was not entitled to disability insurance benefits.
 
 
 10
 The plaintiff appealed the decision to the Appeals Council, which remanded the case for a supplemental hearing on the transferability of the plaintiff's work skills. The Appeals Council stated that it agreed with the ALJ's finding that the plaintiff retains the residual functional capacity to perform light work. However, the Appeals Council found that there was no evidence in the record on the degree of vocational adjustment required for the plaintiff to transfer his skills to other jobs.
 
 
 11
 A supplemental hearing was held on August 26, 1988, before Administrative Law Judge Andre Trawick, Jr., who also concluded that the plaintiff is not disabled. His decision became final when the Appeals Council denied the plaintiff's request for further review.
 
 
 12
 The plaintiff filed a complaint in this Court seeking a judicial review of the denial of benefits. The plaintiff's brief in support of his complaint listed six "issues" for review. The magistrate judge rejected the plaintiff's arguments on each issue and recommended that the Secretary's determination be affirmed. As discussed more fully below, the plaintiff has filed objections to the magistrate judge's findings on five of the six issues.
 
 II. ANALYSIS
 
 13
 Under 28 U.S.C. § 636(b), this Court must make a de novo determination of those portions of a report and recommendation to which a party objects. A district court may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.
 
 
 14
 A. Issue II--Consideration of the Entire Record
 
 
 15
 The plaintiff argues that ALJ Trawick failed to consider the entire record in reaching his determination that the plaintiff is not disabled. More specifically, the plaintiff argues that the Secretary improperly segregated the plaintiff's claim into a pre-surgery claim and a post-surgery claim.
 
 
 16
 As the plaintiff points out, ALJ Williams conducted the plaintiff's first administrative hearing on September 17, 1987, which was about three months before the plaintiff had surgery on two ruptured cervical discs. Upon remand from the Appeals Council on the issue of transferability of the plaintiff's work skills, ALJ Trawick held a second hearing on August 26, 1988. Because the plaintiff had undergone surgery since the last hearing, ALJ Trawick heard additional testimony from the plaintiff and examined the physician's reports regarding the surgery and followup visits. He also heard testimony from a vocational expert regarding the transferability issue.
 
 
 17
 The plaintiff complains that ALJ Trawick's decision, issued on November 4, 1988, discusses only the new medical evidence presented at the second hearing. Because the decision fails to discuss the plaintiff's medical history prior to his surgery, the plaintiff argues that he was denied the opportunity to show that his impairment has continued for a period of twelve months as required to become eligible for disability benefits.
 
 
 18
 The Court agrees with the magistrate judge that the plaintiff's argument on this issue is without merit. The ALJ's written decision clearly demonstrates that his determination was made upon review of the entire record. The decision does not give a detailed account of the evidence regarding the plaintiff's medical history prior to his surgery because that evidence was accurately and completely summarized in the earlier decision by ALJ Williams. Therefore, ALJ Trawick merely incorporated the previous summary into his decision. Record at 13.
 
 
 19
 In his evaluation of the evidence, the ALJ states that
 
 
 20
 [a]s concluded by the prior Administrative Law Judge and the Appeals Council, the undersigned concurs that the claimant does not have the ability to do the strenuous types of jobs that he has done in the past. The claimant despite his more recent neck surgery does retain the ability to perform light work.
 
 
 21
 Id. at 15. This statement belies the plaintiff's allegation that the ALJ segregated his evaluation of the evidence into pre-surgery and post-surgery contexts. Rather, the ALJ's statement demonstrates that he reviewed the entire record and reached the same conclusion as ALJ Williams and the Appeals Council--i.e., that the plaintiff could not perform work that he has done in the past but that he does have the residual functional capacity to perform light work.
 
 
 22
 ALJ Trawick's decision, however, goes one step further. To reflect the new medical evidence regarding the plaintiff's surgery, ALJ Trawick states that the plaintiff retains the ability to perform light work despite his recent neck surgery. The ALJ's decision does not provide a detailed discussion on this issue, but a detailed evaluation is not necessary. The ALJ "need not provide a written evaluation of every piece of evidence that is presented." Steward v. Bowen, 858 F.2d 1295, 1299 (7th Cir.1988). The ALJ is required only to provide a minimal level of articulation of his or her assessment of the evidence. Id.
 
 
 23
 The plaintiff next argues that the Appeals Council improperly refused to consider additional medical evidence from the plaintiff's treating physician, Dr. Joseph Hanaway. Dr. Hanaway submitted an assessment on February 1, 1989, stating his medical opinion that the plaintiff was not capable of performing even sedentary work. The plaintiff contends that this opinion was improperly rejected on the ground that it was not supported by any medical or laboratory findings. See Veal v. Bowen, 833 F.2d 693, 699 (7th Cir.1987) ("Where diagnoses are not supported by medically acceptable clinical and laboratory diagnostic techniques, this court need not accord such diagnoses great weight."). The plaintiff argues that Dr. Hanaway's opinion was based upon his prior medical records regarding the plaintiff, which were already part of the administrative record. Thus, he argues that the opinion was supported by medical findings.
 
 
 24
 The plaintiff has missed the point of the Appeals Council's decision. The Appeals Council expressly acknowledged that the physical findings contained in the report were essentially the same as those in earlier reports from Dr. Hanaway and Dr. George R. Schoedinger. Record at 4. However, the earlier findings already had been considered by the ALJ. Therefore, Dr. Hanaway's February 1, 1989, assessment added nothing new to the record except his opinion that the plaintiff is incapable of even sedentary work.[1]
 
 
 25
 As the Appeals Council points out, such opinions are not determinative of the issue of disability; the Secretary is required to evaluate the medical findings and other evidence that support such a statement. Allen v. Weinberger, 552 F.2d 781, 785 (7th Cir.1977); 20 C.F.R. § 404.1527 ("[A] statement by your physician that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are 'disabled.' ") Dr. Hanaway's previous medical findings had been fully considered during the administrative process. No new findings were submitted with the February 1, 1989, assessment. Therefore, the Appeals Council did not err in refusing to give any further consideration to the assessment.
 
 
 26
 B. Issue III--Consideration of Plaintiff's Unsuccessful Work Attempts
 
 
 27
 The plaintiff argues that ALJ Trawick erred in denying benefits to the plaintiff based upon the fact that the plaintiff had collected unemployment compensation and had continued to work, although intermittently on a part-time basis, since his injury.
 
 
 28
 The plaintiff has cited several cases in which courts held that "receipt of unemployment compensation benefits does not in itself prove ability to work." See, e.g., Lackey v. Celebrezze, 349 F.2d 76, 79 (4th Cir.1965); Flores v. Department of Health, Educ. & Welfare, 465 F.Supp. 317, 325 (S.D.N.Y.1978). The courts acknowledged that an individual is eligible for unemployment benefits only upon certification that he is ready, willing and able to work. However, the courts stated that there was no evidence that the claimant was aware of the fact that by accepting unemployment compensation, the claimant was representing that he or she was physically able to work. Under those circumstances, the courts held that the mere acceptance of unemployment benefits does not prove that a claimant is physically able to work.
 
 
 29
 The same reasoning applies to the case at bar. Illinois law requires that an unemployment compensation claimant certify that he is willing and able to work. Ill.Rev.Stat. ch. 48, p 420(c) (1989). However, there is no evidence in the record that the plaintiff was aware that he was making this representation in accepting unemployment benefits. Therefore, it would be improper for the ALJ to deny benefits to the plaintiff solely because he had accepted unemployment benefits. But that is not what occurred in this case. Rather, the ALJ's decision was primarily based upon the medical evidence. Record at 15. In commenting on the plaintiff's acceptance of unemployment benefits and his part-time work, the ALJ was simply providing additional support for his conclusion that the plaintiff is not disabled.
 
 
 30
 The plaintiff also argues that the Social Security regulations prohibit the ALJ from considering the plaintiff's work attempts following his injury. As the plaintiff points out, the Social Security regulations state that "[w]e will generally consider work that you are forced to stop because of your impairment as an unsuccessful work attempt and your earnings from that work will not show that you are able to do substantial gainful activity." 20 C.F.R. § 404.1574(a)(1).
 
 
 31
 It is important to read this regulation in its proper context, however. The regulation as a whole provides that a claimant's earnings may show that he or she has engaged in substantial gainful activity. Once an ALJ has determined that a claimant is currently engaged in substantial gainful activity, the claimant is then categorized as not disabled. 20 C.F.R. § 404.1520(b). Thus, a finding that the claimant has engaged in substantial gainful activity automatically results in a determination that the claimant is not entitled to disability benefits. Under these circumstances, it would be unfair to consider a claimant's unsuccessful work attempts. Accordingly, 20 C.F.R. § 404.1574(a)(1) provides that the Secretary will not consider earnings from unsuccessful work attempts as conclusive proof that the claimant is currently engaged in substantial gainful activity.
 
 
 32
 In the case at bar, the ALJ did not rely upon the plaintiff's work experience to show that the plaintiff is currently engaged in substantial gainful activity. In fact, the ALJ found that the plaintiff has not engaged in substantial gainful activity since December 30, 1985. Record at 16. Thus, the plaintiff was not automatically excluded from obtaining benefits based solely upon unsuccessful work attempts. Rather, the ALJ considered the plaintiff's work efforts as additional evidence to support his conclusion that the plaintiff has the residual functional capacity to perform sedentary to light work. Used in this fashion, evidence of unsuccessful work attempts is not conclusive proof of the plaintiff's ability to work, but is only one piece of evidence to be considered with other evidence to determine whether the plaintiff is physically able to work.
 
 
 33
 Here, the ALJ relied primarily on the medical evidence in the record to determine that the plaintiff is capable of sedentary to light work. The plaintiff's work attempts tend to support this conclusion because they reflect both his mental and physical abilities. Accordingly, the Court holds that the ALJ did not err in considering the plaintiff's work attempts as an additional, but not sole, reason for concluding that the plaintiff is not disabled.
 
 C. Issue IV--Transferability of Skills
 
 34
 The plaintiff argues that ALJ Trawick erred in adopting, without proper foundation, the conclusions of the vocational expert regarding the transferability of the plaintiff's skills.
 
 
 35
 The Social Security Regulations provide that in order to find transferability of skills for a claimant who is age 60 or over and limited to light work, "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Subpart P, App. 2, §§ 201.00(f), 202.00(f). During the second hearing on the plaintiff's claim, ALJ Trawick expressly asked the vocational expert how much vocational adjustment was required for the plaintiff to transfer his skills to the jobs identified by the expert. Record at 123-24. The expert stated that "very little" adjustment was required with respect to tools, and "not much" was required with respect to work process, work settings, and industry. Id.
 
 
 36
 The plaintiff argues that the ALJ had the obligation to obtain a description as to why the jobs identified by the expert required very little, if any, vocational adjustment. In other words, the plaintiff contends that the expert must give a foundation for his conclusions.
 
 
 37
 Preliminarily, the Court notes that the expert did provide some rationale, albeit very brief, for his opinion. More importantly, however, the plaintiff has provided no legal authority which would require an expert to provide such a foundation. The Federal Rules of Evidence provide that an expert may testify in the form of an opinion without prior disclosure of the underlying facts or data. Fed.R.Evid. 705. Moreover, the rules provide that an expert's opinion may embrace an ultimate issue to be decided by the trier of fact. Id. Rule 704.[2]
 
 
 38
 Rule 705 provides that an expert may be required to disclose the underlying facts or data on cross-examination. However, the plaintiff's attorney did not pursue the issue of vocational adjustment during his cross-examination of the expert. Accordingly, the Court finds that the ALJ did not err in relying upon the expert's opinion without requiring a detailed foundation.
 
 
 39
 D. Issue V--The Severity of the Plaintiff's Impairment
 
 
 40
 The plaintiff argues that the ALJ erred in finding that the plaintiff's impairment does not meet or equal the requirements of section 1.05(c) of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1, § 1.05(c). Section 1.05(c) provides that an individual will be found to be disabled if the evidence demonstrates a spinal disorder accompanied by both (1) pain, muscle spasm, and significant limitation of motion in the spine; and (2) appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 41
 The Court finds substantial evidence in the record to support the findings by both ALJ Williams and ALJ Trawick that the plaintiff fails to meet the requirements of section 1.05(c). Although the plaintiff meets the first requirement of the test, his radicular symptoms do not meet the second requirement. The medical evidence shows that the plaintiff has some muscle weakness but his condition is not of the severity required by the listing.
 
 
 42
 The evidence also fails to show that the plaintiff meets the standard for medical equivalence stated in Social Security Ruling 83-19. The ruling provides that equivalency can be found when the claimant fails to meet one or more of the specified medical findings in the listing but there are other medical findings of equal or greater clinical significance and relating to the same impairment. The plaintiff argues that his headaches are the equivalent of the requirements he fails to meet in section 1.05(c)(2). This argument must be rejected, however, based upon the ALJ's finding that the plaintiff's testimony regarding the severity of his pain was not credible. Record at 15, 16.
 
 
 43
 As the ALJ points out, the record "does not contain clinical findings, laboratory studies or diagnostic studies establishing the existence of an anatomical, physiological or psychological condition that would reasonably be expected to account for the symptoms of the character and severity alleged by the claimant." Id. at 15.[3] As a practical matter, the ALJ's finding also is supported by the fact that the plaintiff is taking only Excedrin for his pain. As ALJ Williams pointed out, the plaintiff's pain medication regime "is not of the kind or quantity consistent with severe intractable pain." Id. at 36. Thus, the plaintiff's headaches do not meet the equivalency standard.
 
 
 44
 The plaintiff's next objection is that the ALJ, in determining whether the plaintiff was able to perform light work, improperly failed to consider the plaintiff's restricted head movements. The plaintiff testified that in order to prevent headaches and pain in his neck, he must hold his head at "center bubble"--referring to the bubble in a carpenter's level. Id. at 102-03. As he points out, the vocational expert testified that an individual who is required to keep his head centered to avoid headaches would not be able to perform any of the light work and some of the sedentary jobs identified by the expert. Id. at 131.
 
 
 45
 Although the ALJ found the plaintiff's testimony regarding his condition was not credible, the plaintiff argues that the restrictions on his head movements are supported by the opinion of his treating surgeon, Dr. Schoedinger. In a medical report dated September 1, 1988, Dr. Schoedinger stated that the plaintiff is not a candidate "for those occupations which require any significant motion of the cervical spine or prolonged maintenance of cervical position at the extremes of motion." Id. at 267. Dr. Schoedinger's opinion, however, does not require the plaintiff to hold his head in a rigid position; nor would it preclude the plaintiff from tilting his head down slightly while writing. Accordingly, the Court finds substantial evidence in the record to support the ALJ's finding that the plaintiff is able to perform sedentary to light work.
 
 
 46
 E. Issue VI--Use of Hypotheticals and the Grids
 
 
 47
 The plaintiff argues that ALJ Trawick asked the vocational expert hypothetical questions that did not accurately reflect the medical evidence or testimony of the plaintiff. The first hypothetical question challenged by the plaintiff asked the expert to assume that the hypothetical person had numbness in both hands, mild loss of grip in the dominant hand, and random, mild headaches occurring through the day. Record at 124-25.
 
 
 48
 The other question asked the expert to assume that the hypothetical person had numbness of both hands, diminished grip in both hands although more prominent in the right, and headaches once a day, usually in the evening or at night. Id. at 125-26. The expert testified that both hypothetical persons were physically able to work. Id. at 125, 126. The plaintiff argues that the hypothetical questions do not accurately reflect the evidence in the case because the questions (1) identified the plaintiff's headaches and loss of grip as "mild," although the plaintiff testified that these conditions were more severe; and (2) failed to discuss the plaintiff's neck and shoulder discomfort.
 
 
 49
 As a general rule, a hypothetical question must accurately describe the claimant's impairments. However, "[a]ll that is required is that the hypothetical question be supported by the medical evidence in the record." Meredith v. Bowen, 833 F.2d 650, 654 (7th Cir.1987). Moreover, the ALJ "is not required to include every physiological impairment suggested by the evidence. Rather, the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ." Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir.1985).
 
 
 50
 In this case, the ALJ found that the plaintiff's testimony as to the disabling effects of his medical problems was not credible. Record at 16. Thus, the ALJ is not bound by the plaintiff's description of the severity of his headaches and loss of grip. Although the plaintiff testified that his headaches were moderate to severe, there was substantial evidence in the medical records for the ALJ to find that both the headaches and loss of grip were mild. Id. at 220, 236, 241.
 
 
 51
 Similarly, the failure to mention the plaintiff's neck and shoulder pain in the hypothetical question is not fatal to the ALJ's findings. The plaintiff testified that he had two physical problems that impaired his ability to work--headaches and arm problems. Id. at 98. The plaintiff described his neck and shoulder discomfort as accompanying his headaches, rather than as a separate impairment. Id. at 99. Because the hypothetical question reflected the headaches and the loss of grip, the failure to include the neck and shoulder discomfort does not constitute reversible error.
 
 
 52
 The plaintiff's final objection is that the ALJ erred in relying upon the Medical-Vocational Guidelines (or Grids)[4] because the plaintiff has a significant non-exertional impairment. "The regulations provide that [the Grids] will be applied only when they describe a claimant's abilities and limitations accurately." Heckler v. Campbell, 461 U.S. 458, 462 n. 5 (1983). It is important to note that the Grids measure only exertional limitations; they do not reflect non-exertional limitations such as the headaches and other pain. Thus, "[a]pplication of the grid is precluded ... in cases where a claimant's non-exertional limitation restricts the full range of employment opportunities at the level of work that the claimant is physically capable of performing...." Warmoth v. Bowen, 798 F.2d 1109, 1110 (7th Cir.1986).
 
 
 53
 In this case, the plaintiff argues that the ALJ did not consider whether the plaintiff's headaches and neck pain further restricted the plaintiff's physical abilities. The Court disagrees. Although the ALJ does not precisely set forth his method of analysis, it is clear from his decision that the ALJ did consider the plaintiff's testimony regarding his headaches and other pain, but ultimately found the plaintiff's testimony not credible. It is equally apparent from the context of the ALJ's decision that he considered the claims of headaches and neck pain as part of his evaluation of the plaintiff's ability to perform light work. Implicit in the ALJ's findings, therefore, is the conclusion that the plaintiff's non-exertional limitations did not restrict his ability to perform jobs within the categories of sedentary to light work.
 
 
 54
 Even if the Court were to find it improper for the ALJ to rely solely upon the Grids to determine whether the plaintiff is disabled, the ALJ's findings also are supported by the testimony from the vocational expert. In response to the ALJ's hypothetical questions, the expert stated that a person could perform the sedentary to light work identified by the expert even though the person had numbness of both hands, diminished grip in both hands but more prominent in the right, and headaches once a day, usually in the evening or at night. As discussed above, this description fairly reflects the ALJ's assessment of the plaintiff's condition. Therefore, the expert's responses to the hypothetical questions demonstrate that the plaintiff is capable of performing substantial gainful activity.
 
 III. MOTION TO REMAND
 
 55
 During this Court's review of the magistrate judge's report and recommendation, the plaintiff filed a motion for a remand under 42 U.S.C. § 405(g). Section 405(g) provides that a court may remand a case to the Secretary where there is new and material evidence submitted and there is good cause for failing to incorporate the evidence in a prior proceeding.
 
 
 56
 The plaintiff has submitted two "new" reports from Drs. Hanaway and Schoedinger based upon followup examinations of the plaintiff in March 1991. However, the only new evidence in Dr. Hanaway's report is a description of the plaintiff's current physical condition, which has no bearing on the Secretary's non-disability determination in 1988. Similarly, Dr. Schoedinger's findings and opinion--that the plaintiff is "totally disabled from the standpoint of any and all gainful employment which requires any significant use of his shoulders or upper limbs"--are substantially unchanged from his previous reports.
 
 
 57
 The plaintiff argues that the reports constitute new and material evidence because the reports are dated well after the Secretary's decision and because they give an historical overview "showing the Plaintiff's persistent limitations and the fact that his impairment meets or exceeds 1.05(C) of the Listing of Impairments." In essence, the plaintiff's new evidence is nothing more than a thinly veiled attempt to relitigate the medical evidence is already part of the record. The Court, therefore, DENIES the plaintiff's Motion for Remand (Document No. 15).
 
 IV. SUMMARY
 
 58
 Based upon the foregoing analysis, the Court DENIES the plaintiff's Motion for Remand (Document No. 15) and ADOPTS Magistrate Judge Frazier's Report and Recommendation. Accordingly, the Court AFFIRMS the Secretary's determination that the plaintiff is not entitled to a period of disability or disability insurance benefits.
 
 
 59
 IT IS SO ORDERED.
 
 
 60
 /s/James L. Foreman
 
 CHIEF JUDGE
 
 
 [1]
 The same reasoning applies to Dr. Schoedinger's September 1, 1988, report that apparently was overlooked by ALJ Trawick. The Court agrees with the Appeals Council and the magistrate judge that Dr. Schoedinger's findings in that report were essentially the same as those in an earlier report considered by the ALJ. Thus, there is no reason to conclude that significant evidence was ignored by the ALJ in failing to consider the most recent report
 
 
 [2]
 The Court recognizes that some rules contained in the Federal Rules of Evidence are not applicable to Social Security hearings. 42 U.S.C. § 405(b) (1988) ("Evidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure.") However, with respect to expert opinions, the general rule is that "any expert opinion admissible in a civil law suit would also be admissible in a Social Security proceeding." H. McCormick, Social Security Claims and Procedures § 626 (1983). Thus, Federal Rules of Evidence 704 and 705 are applicable to the plaintiff's case
 
 
 [3]
 The Social Security Act provides that a claimant's statement of pain or other symptoms "shall not be conclusive evidence of disability ... there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged...." 42 U.S.C. § 423(d)(5)(A)
 
 
 [4]
 20 C.F.R. Part 404, Subpart P, App. 2, § 202.07